FILED

2014 NOV -6 PM 4:04

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN JALLO, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MIDLAND FUNDING, LLC and MIDLAND CREDIT MANAGEMENT, INC.,<br><br>Defendants. | CASE NO. 14-CV-325-BEN (NLS)<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO COMPEL ARBITRATION**<br><br>**(2) STAYING ACTION PENDING ARBITRATION**<br><br>[Docket No. 16] |

Before this Court is a Motion to Compel Arbitration, filed by Defendants Midland Funding, LLC and Midland Credit Management, Inc. (Docket No. 16). Defendants assert that this dispute is subject to a binding arbitration clause, and ask this Court to stay the action and compel arbitration. For the reasons stated below, the Motion to Compel is **GRANTED**, and the action is **STAYED** pending arbitration.

## BACKGROUND

On February 11, 2014, Mr. Jallo brought his Class Action Complaint, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1962 *et seq.*, and the California Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code, § 1788 *et seq.* (Compl. ¶ 1). All of Mr. Jallo's claims and allegations arise out of a Citibank/Sears credit card account ("the Account") that he opened in February 2000. (Mot. at 1; Compl. ¶ 14). Mr. Jallo used the Account to

1  make purchases from Sears. (Compl. ¶ 13). On May 28, 2009, Citibank "charged off"
2  the Account. (Compl. ¶ 15). In December 2011, Citibank sold the Account to
3  Defendant Midland Funding, LLC. (Mot. at 1; Compl. ¶ 23). Defendant Midland
4  Credit Management, Inc. ("MCM") serviced the Account on behalf of Midland
5  Funding. (Compl. ¶ 27). The balance due at the time Midland Funding purchased the
6  Account was $3,652.45. (Compl. ¶ 36). Defendants charged interest on the Account.
7  (Compl. ¶¶ 39, 70, 74). On October 23, 2013, MCM reported to Mr. Jallo that the
8  outstanding balance on the Account was $4,616.00. (Compl. ¶ 40).

9        Mr. Jallo proposes to represent two classes. (Compl. ¶ 43). The first class
10 includes persons from whom Defendants collected or attempted to collect interest on
11 consumer debt, which Midland Funding purchased from Citibank after Citibank
12 charged off the accounts. (*Id.*) The second class includes persons about whom
13 Defendants submitted information to a credit reporting bureau showing balances that
14 included interest charged by Defendants after Citibank charged off the accounts. (*Id.*)

15       Defendants allege that Midland Funding purchased the Account from Citibank,
16 along with all rights relating to the Account. (Mot. at 2). Defendants also allege that
17 Mr. Jallo's claims are subject to a mandatory arbitration provision provided in the
18 Terms and Conditions of the Account's Cardholder Account and Security Agreement
19 ("the Agreement"). (Mot. at 2). The arbitration provision states, "Any and all claims,
20 disputes or controversies of any nature whatsoever . . . arising out of, relating to, or in
21 connection with: (a) this Agreement . . . shall be resolved, upon your election or our
22 election, by final and binding arbitration . . . without resort to any form of class action
23 . . . ." (Mot. at 2, Ex. C § 20). The Agreement also contains an assignment clause,
24 which states, "the Account or any interest, balance or amount owed may be sold,
25 assigned or transferred by us without notice to you. Any purchaser, assignee or
26 transferee is entitled to the benefits of this Agreement." (Ex. C § 24).
27 //
28 //

## LEGAL STANDARD

The Federal Arbitration Act states that agreements to arbitrate are "valid, irrevocable and enforceable." 9 U.S.C. § 2. Section 3 provides that where an issue involved in a suit or proceeding is referable to arbitration under an agreement in writing, the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. The language is mandatory, and district courts are required to order arbitration on issues as to which an arbitration agreement has been signed. *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). The role of the district court is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Arbitration is a matter of contract, and a party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994). Courts must determine whether there is an agreement to arbitrate before ordering arbitration. *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1048 (9th Cir. 1996). State law applies to determine which contracts are binding and enforceable under the FAA, if that law governs the validity, revocability, and enforceability of contracts generally. *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009). The scope of the agreement, however, is a matter of federal law. *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) ("Because the issue involves the arbitrability of a dispute, it is controlled by application of federal substantive law rather than state law.").

## DISCUSSION

### I. Choice of Law

Defendants contend that Arizona law applies to this action. Mr. Jallo does not dispute Defendants' contention.

Federal common law applies to the choice-of-law rule determination because jurisdiction in this case is based on federal question. *See Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006). Federal common law follows the Restatement (Second) of Conflict of Laws approach. *Id.* Courts honor the parties' choice-of-law to govern their claims in dispute, unless: (1) "the chosen state has no substantial relationship to the parties or the transaction" or (2) honoring the parties' choice "would be contrary to a fundamental policy of a state that has a materially greater interest" in the dispute. Restatement (Second) of Conflicts of Laws § 187(2) (1988).

Here, the Agreement contains a governing law provision. (Ex. C § 27). The Agreement states that the Account will be governed by federal and Arizona law because all of the credit on the Account extends from Arizona. This Court therefore finds that Arizona has a substantial relationship to this dispute and application of Arizona law would not be contrary to any fundamental policy of California. Where applicable, this dispute is governed by Arizona law.

**II. The Agreement is Admissible**

Mr. Jallo argues that the Agreement presented by Defendants is insufficient to show a valid agreement to arbitrate exists because the Agreement was not authenticated by MCM, and is therefore, inadmissible. This Court is not so persuaded.

Before an item of evidence may be considered, Federal Rule of Evidence 901(a) requires a proper foundation be laid to authenticate the item by "evidence sufficient to support a finding that the item is what the proponent claims it is." *See Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987). Such a foundation may be laid by testimony of a witness who has personal knowledge. Fed. R. Evid. 901(b)(1).

Here, Defendants produce a declaration of Patrick Minford, Director of Business Development for MCM, stating, "At MCM's request, Citibank provided MCM with the Cardholder Account and Security Agreement for the Jallo Citibank Account. Attached . . . is a true and correct copy of that agreement." (Minford Decl. ¶ 5). As Director of

Business Development, Mr. Minford is qualified to testify about MCM business practices and procedures for requesting and receiving information from third parties. Additionally, Mr. Minford is qualified to attest that the Agreement received by MCM is the document that Citibank sent to MCM. The Agreement is sufficiently authenticated pursuant to Rule 901, and is therefore admissible.

**III. A Valid Agreement to Arbitrate Exists**

Mr. Jallo argues the Agreement is a contract of adhesion and is, therefore, unenforceable under Arizona law because (a) Mr. Jallo would not reasonably expect the arbitration provision to apply to his claims; and (b) the arbitration provision is procedurally and substantively unconscionable. (Opp'n at 2).

"Contracts of adhesion will not be enforced unless they are conscionable and within the reasonable expectations of the parties." *Broemmer v. Abortion Servs. of Phx., Ltd.*, 173 Ariz. 148, 153 (1992) (in banc). "An adhesion contract is typically a standardized form offered to consumers of goods and services on essentially a take it or leave it basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract." *Id.* at 150 (internal quotation marks omitted).

Here, Defendants do not dispute Mr. Jallo's assertion that the Agreement is a contract of adhesion. Thus, to determine whether the Parties agreed to arbitrate, this Court must first determine whether Mr. Jallo[1] would reasonably expect the arbitration and assignment clauses to be included in the Agreement, then whether the arbitration provision is unconscionable.

//
//

---

[1] The Parties contend that the Ninth Circuit's "least sophisticated consumer" standard is applicable here, however, Arizona has not implemented such a standard. Regardless, analysis under Arizona law reveals the same outcome as an application of the Ninth Circuit's standard.

(a) Reasonable Expectation

Mr. Jallo argues that it is unreasonable to expect that his claims against Defendants–alleged violations of the FDCPA and the Rosenthal Act–to be subject to arbitration per the Agreement between himself and Citibank. (Opp'n at 4-5). It is apparent, then, that Mr. Jallo does not dispute that the arbitration clause validly exists and that it would govern his claims against Citibank; rather, Mr. Jallo contends that he could not reasonably expect the arbitration clause to govern his claims against third parties, the Defendants.

A contract term is not within a party's reasonable expectations if one party to the contract "has reason to believe that the [other party] would not have accepted the agreement if he had known that the agreement contained the particular term." *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 391-92 (1984) (in banc). Courts consider seven factors in determining whether a party has "reason to believe." *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 247-48 (Ct. App. 2005). It can be "(1) shown by prior negotiations, (2) inferred from the circumstances, (3) inferred from the fact that the term is bizarre or oppressive, (4) proved because the term eviscerates the non-standard terms explicitly agreed to, (5) proved if the term eliminates the dominant purpose of the transaction," (6) shown by drafting of provisions which cannot be understood if the customer does attempt to check on his rights, and (7) shown by any other relevant factors. *Id.* at 247-48 (citing *Darner*, 140 Ariz. at 392-94).

Here, the agreement to arbitrate originated from the creation of Mr. Jallo's Account with Citibank. In order to determine whether an agreement to arbitrate exists between Mr. Jallo and Defendants, this Court considers whether Mr. Jallo had an agreement to arbitrate with Citibank. Then the Court will consider whether the agreement to arbitrate extends to Defendants.

As to the first factor, "prior negotiations," there is no evidence of negotiations between Mr. Jallo and Citibank, therefore, no inferences as to whether Mr. Jallo would

expect the terms in the Agreement. The second factor, "the circumstances," also provides no inferences that Mr. Jallo believed the arbitration and assignment clauses would or would not be in the Agreement.

Neither does the third factor, "bizarre or oppressive," suggest any inferences that Mr. Jallo would not reasonably expect the arbitration and assignment clauses to be included in the contract. Arbitration clauses are favored by federal and state public policy. *See CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *Liberty Mut. Fire Ins. Co. v. Mandile*, 192 Ariz. 216, 220 (Ct. App. 1997). Additionally, it is a commonly accepted principle that contract rights are assignable. *See Smith v. Payne*, 156 Ariz. 506, 511 (1988). Thus, the arbitration clause and the assignment clause are not bizarre or oppressive.

The fourth factor, "eviscerate non-standard terms," also does not suggest that Mr. Jallo would not reasonably expect the arbitration and assignment clauses to be in the Agreement. Arbitration and assignment provisions are unlikely to counteract other terms in a credit card agreement. Likewise, the fifth factor, "eliminate purpose of the contract," does not combat the dominant purpose of the Account Agreement. Assignment and arbitration do not affect the ability of Citibank to extend credit to Mr. Jallo. Nor do the clauses affect Mr. Jallo's ability to receive and use that credit allowance.

The sixth factor requires Citibank to draft the terms in a manner that can be understood by Mr. Jallo. A reading of the Agreement indicates the terms were written clearly and conspicuously. The arbitration clause states, "Any and all claims, disputes, or controversies of any nature whatsoever" arising out of the Agreement will be resolved by arbitration. (Ex. C § 20). The provision also includes the following paragraph in bold typeface and all capital letters:

> **YOU UNDERSTAND AND AGREE THAT, UNDER THIS AGREEMENT, IF ARBITRATION IS CHOSEN BY YOU OR US, YOU WILL NOT HAVE THE RIGHT TO GO TO COURT . . . ON THAT CLAIM OR TO HAVE A JURY TRIAL ON THAT CLAIM.**

**IF ARBITRATION IS CHOSEN, YOU ALSO WILL NOT BE ABLE TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO THAT CLAIM AND YOU WILL HAVE ONLY THOSE RIGHTS THAT ARE AVAILABLE IN ARBITRATION. THE DECISION OF THE ARBITRATOR WILL BE FINAL AND BINDING EXCEPT AS PROVIDED IN THE FEDERAL ARBITRATION ACT.**

(Ex. C § 20). Further, the assignment clause is also written in plain English. It states in relevant part, "You understand that the Account or any interest, balance or amount owed may be sold, assigned or transferred by us without notice to you. Any purchaser, assignee or transferee is entitled to the benefits of this Agreement." (Ex. C § 24). These terms are not confusing or difficult to comprehend. The clauses were written in a manner that Mr. Jallo could understand them.

Finally, there are no other relevant factors to consider. No evidence exists to convey that Citibank had any reason to believe that Mr. Jallo might not accept the Agreement if he knew the arbitration and assignment provisions were included. The terms are written clearly, so that Mr. Jallo should have been aware and could reasonably expect that Citibank might sell his debt to a third party, and the debt would remain subject to all of the terms and conditions contained in the Agreement. Finding Mr. Jallo and Citibank had a valid agreement to arbitrate, the Court also finds the agreement extends to Defendants by way of the assignment clause. The arbitration and assignment clauses are, therefore, not beyond what Mr. Jallo could reasonably expect in the Agreement. Thus, Mr. Jallo and Defendants have an agreement to arbitrate.

(b) Unconscionability

Finding that the arbitration provision was within Mr. Jallo's reasonable expectation, this Court now addresses whether the agreement to arbitrate is unconscionable.

Even when consistent with a party's reasonable expectations, contract provisions may still be unenforceable if they are oppressive or unconscionable. *Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 88 (in banc). Unconscionability is shown by substantive and procedural unconscionability. *Nelson v. Rice*, 198 Ariz. 563, 567 (Ct. App. 2000).

*(1) Substantive Unconscionability*

Mr. Jallo argues that the Agreement is substantively unconscionable because the Agreement contains a modification clause, allowing Citibank to modify the Agreement at any time. (Opp'n at 9). In other words, Mr. Jallo argues that the modification clause is substantively unconscionable, not the arbitration clause.

"Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Maxwell*, 184 Ariz. at 89 (citation omitted). Factors showing substantive unconscionability include "contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Harrington*, 211 Ariz. at 252 (quoting *Maxwell*, 184 Ariz. at 89).

There is no oppression here. The arbitration clause states that either Mr. Jallo or Defendants may elect to resolve any dispute arising out of the Agreement by arbitration. The arbitration clause is not one-sided because both Parties have the option to elect arbitration. On the contrary, the clause is balanced. Mr. Jallo does not argue that the arbitration clause is unilaterally designed; rather, he challenges a different provision of the Agreement altogether. Without anything more to support an argument for substantive unconscionability, a determination of whether the Agreement's modification clause is unconscionable is a question for the arbitrator. *See Byrd*, 470 U.S. at 218; *Chiron Corp.*, 207 F.3d at 1130. This Court concludes the arbitration clause is not substantively unconscionable.

*(2) Procedural Unconscionability*

Mr. Jallo argues that procedural unconscionability exists because the Agreement is an adhesion contract, and there is no evidence that Citibank explained any of the terms or that Mr. Jallo ever saw the Agreement. (Opp'n at 7-8).

Procedural unconscionability considers whether something was wrong with the bargaining process. *Nelson*, 198 Ariz. at 567. It is concerned with "unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean

1  bargaining did not proceed as it should." *Maxwell*, 184 Ariz. at 88-89 (citations
2  omitted) (internal quotation marks omitted).

3       As stated above, the Parties do not dispute that the Agreement is a standardized,
4  adhesion contract. It was offered on a take-it-or-leave-it basis, and Mr. Jallo did not
5  negotiate for or against the terms included therein. Under Arizona law, this alone does
6  not amount to procedural unconscionability. *See Broemmer* 173 Ariz. at 151 ("A
7  contract of adhesion is fully enforceable according to its terms unless certain other
8  factors are present which, under established legal rules–legislative or judicial–operate
9  to render it otherwise."). Mr. Jallo's remaining arguments inappropriately shift away
10 his responsibility of reading the Agreement. *See Darner* 140 Ariz. at 393-94 (adopting
11 a rule that charges the customer with knowledge of the unknown terms in standardized
12 contracts drafted in good faith). The Court therefore finds the arbitration clause is not
13 procedurally unconscionable.

14       In summary, an agreement to arbitrate exists between Mr. Jallo and Defendants.
15 The agreement is well within Mr. Jallo's reasonable expectations, and it is neither
16 substantively nor procedurally unconscionable.

17 **IV. The Agreement Governs the Claims**

18       Alternatively, Mr. Jallo argues the Agreement, if enforceable, does not govern
19 his claims. (Opp'n at 15).

20       "[W]here the contract contains an arbitration clause, there is a presumption of
21 arbitrability." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir.
22 2009) (citation omitted). "The party resisting arbitration bears the burden of proving
23 that the claims at issue are unsuitable for arbitration." *Hoffman v. Citibank (S.D.),
24 N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008) (quoting *Green Tree Fin. Corp.-Ala. v.
25 Randolph*, 531 U.S. 79, 91 (2000)).

26       The arbitration clause in dispute is broad. *See Simula, Inc. v. Autolive, Inc.*, 175
27 F.3d 716, 720-21 (9th Cir. 1999) (construing "all disputes arising in connection with"
28 language as broad). It contemplates "[a]ny and all claims, disputes or controversies of

any nature whatsoever . . . arising out of, relating to, or in connection with: (a) this Agreement." (Ex. C § 20). This language encompasses Mr. Jallo's claims. The dispute in this case revolves around Defendants' ability to charge interest on the Account, even after the Account has been "charged off." The Agreement contains the assignment clause, the governing law provision, and the modification clauses discussed above. The Agreement, specifically the assignment clause, put Mr. Jallo on notice that his unpaid debt could be sold to a third party, for example, Midland Funding; and the third party would be entitled to all of the rights listed in the Agreement, including the ability to charge interest. (*See* Ex. C §§ 18, 24). The broad language of the arbitration clause subjects to arbitration any claim arising out of the Agreement and against an assignee of the Agreement. Thus, Defendants have the right to invoke arbitration for any dispute arising out of Mr. Jallo's Account.

The Court finds the agreement to arbitrate governs Mr. Jallo's claims against Defendants.

## CONCLUSION

In accordance with the conclusions set forth above, this Court **GRANTS** Defendants' Motion to Compel Arbitration. The Parties are compelled to arbitrate their claims. This Court therefore **GRANTS** Defendants' Motion to Stay pursuant to 9 U.S.C. § 3. This case is **STAYED** pending arbitration. This Court shall retain jurisdiction to enforce any arbitration award. Defendants are **ORDERED** to file a status report with this Court 180 days after this Order is filed, and every 180 days thereafter, until this matter is no longer stayed.

**IT IS SO ORDERED**.

Dated: November 4, 2014

HON. ROGER T. BENITEZ
United States District Judge